WILL OF CRAMER: MARQUETTE UNIVERSITY SCHOOL OF
MEDICINE, Appellant, vs. FIRST WISCONSIN TRUST
COMPANY, Executor, and another, Respondents.

*March 14—April 8, 1924.*

*Wills: Construction: Contingent gifts: Division at future date:
When gift is vested.*

1. In the construction of wills the principal canon to be ob-
   served is to ascertain the intention of the testator' from a
   review and consideration of the entire will; and in doubtful
   cases the law leans in favor of an absolute rather than a
   defeasible estate, and in favor of a vested rather than a con-
   tingent interest.    p. 519.

2. The general rule that a gift will be deemed contingent when it
   is found only in a direction to divide at a future time is sub-
   ordinate to the primary rule that the intent, to be collected
   from the whole will, must prevail.    p. 519.

3. Where testatrix bequeathed property to a trustee with direc-
   tions to give a named person a specified sum at the expiration
   of five years from the date of the death of the testator, and a
   similar sum at the expiration of ten years from that date,
   and directed the trustee to set aside a sum sufficient for the
   payment of such amounts and to invest such sum and pay the
   income to a medical school during the five and ten-year
   periods, and, after payment of all legacies, to hold the residue
   for the benefit of such medical school, such legacy is deemed
   to have become vested at the death of the testatrix and not to
   be contingent upon her surviving the five and ten-year periods,
   especially since other provisions of the will clearly disclose
   that such was the intention of the testatrix.    p. 524.

APPEAL from a judgment of the county court of Mil-
waukee county: JOHN C. KAREL, Judge. *Affirmed.*

This is an appeal by the *Marquette University School of
Medicine* from a judgment entered November 21, 1923.

For the appellant there was a brief by *Glicksman, Gold
& Corrigan,* attorneys, and *M. K. Whyte,* of counsel, all of
Milwaukee, and oral argument by *Walter L. Gold.*

For the respondent *Estate of Edith Cramer* there was a
brief by *Churchill, Bennett & Churchill* of Milwaukee, and
oral argument by *W. H. Bennett.*

For the respondent *First Wisconsin Trust Company,* executor, there were briefs by *Hoyt, Bender & McIntyre* of Milwaukee, and oral argument by *Frank M. Hoyt.*

DOERFLER, J.   The question litigated arises on the construction of· the last will and testament of Harriet L. Cramer, deceased, and involves a certain legacy to Edith Cramer, a daughter of John F. Cramer, a nephew of the deceased husband of the said Harriet L. Cramer.   Precisely stated, the issue presented is whether the legacy to Edith Cramer is contingent upon her surviving the five and ten-year periods referred to in the will, or whether it became vested at the time of the death of the testatrix.   The testatrix left an estate of over a million dollars, less than one fifth thereof being represented by real estate, and the balance by cash and securities consisting chiefly of stocks and bonds.

In the first subdivision of the will the testatrix appoints a trust company as the sole executor and trustee.   The second subdivision is devoted principally to a disposition of various works of art, books, photographic slides, ·etc., excepting that she also bequeaths $1,500 of Athenæum stock to her cousin, Margaret Doyle, and 500 shares of stock in the Wisconsin Printing Company to one John W. Campsie. In and by the third subdivision, the rest, residue, and remainder of her property is devised and bequeathed in trust to her executor and trustee, with directions to convert the same into money; and in order that such conversion may be effected with due regard to the best interests of her estate, a time limit of five years is fixed for the conversion of the personal property and ten years for the real estate.   The fourth subdivision consists of thirty-two paragraphs, in and by which the executor and trustee is required to pay the debts of the testatrix, the expenses of her last sickness and funeral expenses, for a monument, for perpetual care of her cemetery lot, and various legacies to relatives, friends, and

charitable institutions; while under the thirty-second para-
graph the rest, residue, and remainder is to be held in trust
for the benefit of the *Marquette University School of Medi-
cine*.

The fifth paragraph of the fourth subdivision of the will
reads as follows:

"(5) To give to Edith Cramer, of the city of Milwaukee,
daughter of John F. Cramer, nephew of my late husband,
William E. Cramer, the sum of twenty-five thousand
($25,000) dollars, at the expiration of five (5) years from
the date of my death, and the further sum of twenty-five
thousand ($25,000) dollars at the expiration of ten (10)
years from the date of my death, and for that purpose I
direct my said executor. and trustee to set aside the sum of
fifty thousand ($50,000) dollars· from the funds in its hands
at such time as in its discretion the same can be done with
proper regard to the best interests of my estate, and to in-
vest said sum in good, interest-paying securities, paying the
entire income thereof to the *Marquette University School of
Medicine, Incorporated,* in trust, for the uses and purposes
for which the income of the rest, residue, and remainder of
the proceeds of my estate is given to said school as herein-
after provided, until the expiration of the period of five (5)
years after my death, at which time twenty-five thousand
($25,000) dollars of said principal sum is to be paid to the
said Edith Cramer. The income on the remaining twenty-
five thousand ($25,000) dollars is to· be paid to said school
for the purposes aforesaid until the expiration of ten (10)
years after my death, when the balance of said principal
sum shall be paid to the said Edith Cramer."

Counsel for the medical school strongly urge that the
language used in the fifth paragraph above set forth de-
notes an intention to distribute $25,000 at the expiration of
five years from the date of the death of the testatrix, and
the further sum of $25,000 at the expiration of ten years
from such date; that such provision in the will cannot prop-
erly be construed as a gift to take effect *in præsenti*, but that
it becomes effective only upon the legatee surviving the
periods named, and that the vesting of the gift is therefore

subject to a condition precedent; and it appearing further
that the legatee having died before the expiration of five
years from the date of the death of the testatrix, the legacy
lapsed and therefore fell into and became a part of the es-
tate to be disposed of under the residuary clause of the will;
that the language so used, being clear, determines the effect
of such provision. On the other hand, opposing counsel
claim that, regardless of the specific language used in the
beginning of such paragraph, the entire paragraph and the
provisions thereof, when read in the light of the whole will,
denote an intention of a present gift and of a postponement
as to the time of payment, and that therefore the element of
time is not annexed to the gift but to the payment.

In *Ohse v. Miller,* 137 Wis. 474, 119 N. W. 93, it was
held:

"The gift will be held to vest, if such appears to have been
the testator's intention, even though it be expressed in a
mere direction to pay. The real inquiry is whether the
element of time is annexed to the gift itself as a condition
precedent or merely to the payment of it."

In the construction of wills the principal canon to be ob-
served is to ascertain the intention of the testator from a
review and consideration of the entire will, and "that in
doubtful cases the law leans in favor of an absolute rather
than a defeasible estate, and of a vested rather than a con-
tingent interest; and that, while the general rule is that a
gift will be deemed contingent when it is found only in a
direction to divide at a future time, this is subordinate to
the primary rule that the intent, to be collected from the
whole will, must prevail." *Smith v. Smith,* 116 Wis. 570,
93 N. W. 452.

With these rules of construction before us, we will pro-
ceed to examine and consider the pertinent provisions of the
will in order to determine whether the bequest to Edith
Cramer is vested or contingent.

From an examination of the entire will it will appear that

the testatrix had but few blood relatives towards whom she felt a testamentary obligation. In the third paragraph of subdivision 4 she sets aside the sum of $100,000 to be held in trust, directs such sum to be invested in good, interest-bearing securities, and the income thereof paid to her brother during his lifetime, and further provides that upon the death of the brother the principal sum shall fall into and become a part of the residuum, of which the medical school is the beneficiary. Attention is called to the provisions of such third paragraph in order to show that the testatrix clearly had in mind the residuum when she disposed of the principal sum after the death of her brother.

' In the fifth paragraph above set forth, however, the testatrix did not in express language refer to the residuum, nor did she include an express provision in her will under which, in the event of a lapsing of the legacy, the same should be added to the residuum, or that it should be disposed of under the residuary clause. Having had in mind the residuum in the third paragraph, the absence of such clause in the fifth paragraph becomes important and significant. It may be truly said that even without an express provision, if it had been the intention of the testatrix to create a contingent legacy instead of a vested one, this legacy would, as a matter of course, fall into the residuum and be disposed of under the residuary clause. The failure of the testatrix to expressly provide the fate of the legacy in the event of a lapse merely raises a doubt as to whether the testatrix intended to attach the element of time to the gift itself or to the payment.

Counsel for the medical school also contend that the payment of $25,000 at the end of five years, and the further sum of $25,000 at the end of ten years, constitutes a provision for the benefit of the legatee and not of the estate, and, being for the benefit of the legatee, does not vest until the expiration of such periods, and depends upon the legatee surviving. Stated in a different way, the contention of

counsel is that the gift is contingent because it is expressed in a direction to divide at a future time. Here again we call attention to the quotation from *Smith v. Smith, supra,* where it is said that "while the general rule is that a gift will be deemed contingent when it is found only in a direction to divide at a future time, this is subordinate to the primary rule that the intent, to be collected from the whole will, must prevail."

In such fifth paragraph the executor and trustee is expressly directed to set aside the sum of $50,000 from the funds in its hands at such time as in its discretion the same can be done with proper regard to the best interests of the estate. Such setting aside of a specific sum at an early period during the course of the administration is persuasive of the conclusion that the testatrix had in mind two dominant ideas—first, the insuring of the principal sum for the benefit of the legatee, and second, the creation of a fund which, when invested as directed by the will, would yield an income which would form a nucleus out of which the early expenses of the medical school could be defrayed before it became the recipient of the benefit under the residuary clause.

Counsel for the medical school further contend that the will discloses a dominant idea in the mind of the testatrix to perpetuate her memory by the creation and endowment of a school devoted to the cure and relief of afflictions to the human eye; that the great bulk of the estate is disposed of for the purpose of effectuating such design, and that in the construction of the will any doubts arising should, if reasonably possible, be construed in favor of and in accordance with such dominant idea; and that with such thought in view it becomes clear that the testatrix contemplated a contingent rather than a vested interest. Stress is also placed upon the facts that the legatee is not a blood relative of the testatrix; that she is the owner of a considerable estate in her own right and that both of her parents are possessed of

large means, and that therefore it becomes evident that the
testatrix did not intend that the legatee's estate, upon her
death prior to the five or ten-year periods, should be in-
creased by the payment of the legacy.   Such contention is
not without force and does not lack plausibility, and we have
endeavored to credit it to the fullest extent.   Here again it
becomes important to bear in mind the general scheme of the
will.   By the third subdivision all of the property of the
testatrix not disposed of in prior provisions is placed in
trust; a period of five years is allowed for the conversion
into money of the personal property and a period of ten
years for the real estate.   The testatrix was aware that the
legatee under the fifth paragraph was not in immediate need;
on the contrary, she realized that she was amply provided
for and that her parents were possessed of considerable
wealth.   In the will she expressed doubt whether there would
be more than enough of her estate to comply with the first
eight provisions of subdivision 4 of the will.   She realized
that conditions might arise which would result in large
shrinkages in the value of her real and personal property.
Such doubt was not a mere passing fancy or speculation
when we consider that the will was drawn at or about the
time of the close of the World War.   The financial condition
of the world at that time was not only perplexing to her
but to great economists everywhere.   So that in entertaining
these views, in clear and unequivocal language she made her
intention manifest that, over and above the provision for
the medical school and of all other provisions, the bene-
ficiaries under the first eight provisions under subdivision 4
of the will should be preferred and paid in full, and among
such provisions is the paragraph providing for a legacy to
Edith Cramer.   Such preferment is persuasive of the high
sense of duty and obligation which the testatrix manifested
towards the legatee and towards others who had been her
co-workers during the active period of her business life.   In
other words, she made it clear that even though not a dollar

of her estate would ultimately come to the school under the residuary clause, she desired Edith Cramer and others to be paid in full. Such consideration does not raise a mere doubt as to the intention of the testatrix, whether she deemed the legacy a contingent or a vested one, but establishes beyond controversy that she intended a present gift.

By fixing a period of ten years for the conversion of her property the testatrix realized that it might take the greater portion of such period, if not all, to convert her property into money, preparatory to a fulfilment and carrying out of her testamentary dispositions. In providing for the payment of $25,000 to the legatee at the end of five years after the death of the testatrix, the latter merely harmonized the fifth paragraph referred to with the general scheme of her will, wherein and whereby it was thought that a five-year period would be necessary to convert into money, under conditions most advantageous to the estate, her personal property. The same may be said with respect to the other $25,000, which is in harmony with the general scheme pursuant to which adequate time and a favorable opportunity would be afforded for the conversion of her real estate. The testatrix also realized that, barring the third and fifth paragraphs, the only provision for the medical school consisted of the thirty-second paragraph, known as the residuary clause. Being desirous that the charitable work of the medical school might be begun at the earliest possible time, she set aside $50,000 provided for in the fifth paragraph, and deferred the payment of the principal to the legatee during the five and ten-year periods and directed that this sum should be held in trust, invested in good, interest-bearing securities, and the payment of the net income to the upkeep of the school. The amount thus devoted to the school approximated $20,000. Such sum, while not sufficient to carry on the special work designed upon an elaborate scale, nevertheless constituted a material aid to the school in its early stages, and prepared the way for work upon a larger scale

when the amount provided for in the residuary clause would be available. It thus becomes clear that the testatrix, in deferring the payment of the legacy by the fifth paragraph, intended not a benefit to the legatee but a benefit to the estate.

Counsel for the medical school place great reliance upon *Walker v. Walker*, 283 Ill. 11, 118 N. E. 1014, and *Shipman v. Rollins,* 98 N. Y. 311. The wills referred to in such cases, however, are materially different from the one in the instant case, and in each of such cases the will under consideration plainly contemplated a future division of the estate and not a vested interest.

From the foregoing we are convinced that the testatrix gave a vested and not a contingent interest. However, if anything further were necessary to establish the intention of the testatrix, we refer to the thirty-second paragraph of the fourth subdivision of the will, pursuant to which the testatrix gives the rest, residue, and remainder *of the proceeds* realized from the sale of her property, real and personal, remaining after satisfying the foregoing bequests, to the *Marquette University School of Medicine,* etc. From this provision it quite clearly appears that the testatrix intended the payment of the legacies, and that she deemed the legacies, including the one to Edith Cramer, vested and not contingent.

*By the Court.*—The judgment of the county court is affirmed.