WILL OF CORSE: KACHEL and another, Executrices, and others, Appellants, vs. MANUFACTURERS NATIONAL BANK OF RACINE, Trustee, and others, Respondents.

*January 11—February 7, 1928.*

*Wills: Construction of ambiguities: Enjoyment of income until daughter reaches certain age: Judgment: Recitals and preamble as res adjudicata.*

1. In case of an ambiguity in a will it is the duty of the court to discover the intent of the testator and give it effect.  p. 95.
2. Where testator by his will bequeathed the income of his estate for the support and maintenance of the widow and minor daughter until such time as the daughter became twenty years of age, or on her death, the bequest of such income terminated where the daughter attained the age of twenty during the mother's life.  p. 95.
3. The will providing for distribution of one third of the estate to the widow and the other two thirds among the children in case the daughter died before becoming twenty years of age, distribution at the time of such daughter attaining the age of twenty years during the mother's life should be effected by the division of one third to the widow and the remaining two thirds to all the children.  p. 95.
4. In the final judgment in settling an estate the court indicated its view in the recitals preceding the decretal portion of the judgment, that the widow of the testator was entitled to a life estate, but there was nothing in such decretal or ordering portion of the judgment in regard to the life estate or its termination under a contingency which was mentioned in the will. *Held,* that the judgment was not *res adjudicata* in a proceeding to construe the will brought upon the happening of the contingency, as the recitals as to construction do not constitute a part of the judgment or sentence.  pp. 96, 97.
5. Recitals in a judgment, constituting a review of proceedings authorizing a sentence of the law, form no part of the sentence, but merely show justification for pronouncing it.  p. 97.
6. If a judgment is ambiguous, it must, if reasonably possible, be so construed as to exclude error.  p. 98.

ESCHWEILER, J., dissents.

APPEAL from a judgment of the county court of Racine county: ELMER E. GITTINS, Judge. *Reversed, with instructions.*

The *Manufacturers National Bank of Racine,* trustee under the last will and testament of James P. Corse, deceased, applied to the county court of Racine county for a construction of the last will and testament of said James P. Corse, deceased. From the judgment of construction, *Jessie Corse Kachel, Marion Corse Cattron, Christine Pollock, Marion Pollock,* and *Robert H. Corse* appeal.

James P. Corse died June 16, 1917, leaving a will dated January 18, 1909, which was admitted to probate August 7, 1917. The will contained these provisions:

"2d. To my beloved wife *Mary S. Corse,* in case she and our daughter *Catherine S. Corse* survives me, I give, bequeath, and devise the use and enjoyment of all the income from the estate for their comfortable support and maintenance and the education of our daughter *Catherine S.* until she attains the age of (20) twenty years. And if the income is not sufficient for their comfortable support and education (as above), the executors hereinafter named is authorized and empowered to sell any portion of the real estate or all of it and use the proceeds of such sale or sales, and also all notes, moneys, insurance policies that may be necessary for their support and education."

"3d. If after the lapse of (20) twenty years from the 5th of November, 1906, my beloved wife *Mary S.* and daughter *Catherine S.* are living, or if one or both are dead, at the period of either death, if it be the mother our daughter will be the beneficiary until she is twenty years of age. If *Catherine* dies before she is twenty years, then at her death the estate if any will be divided as follows: one third to my beloved wife *Mary S.·* and the two thirds to be divided *pro rata,* share and share alike; namely, to my sons John, James, and *Robert* and to my daughters *Christine Pollock, Marion Pollock,* and *Catherine S. Corse.*"

The estate was duly probated, and on the 5th day of November, 1918, the county court of Racine county, WALTER C. PALMER, county judge, presiding, made and entered a final decree settling the account of the executors, construing the will, and making disposition of the estate.

Will of Corse, 195 Wis. 88.

That document contains numerous recitals concerning the doings of the executors, the status of their account, the property of which the same James P. Corse, deceased, died seized, and continues:

"And it further appearing that in and by the terms of said last will of said deceased, as construed by the court as hereinafter set forth, the property of said deceased was disposed of as follows to wit: The widow *Mary S. Corse,* in conjunction with her daughter *Catherine S. Corse,* is given the use and enjoyment of all income until the said *Catherine S. Corse* attains the age of twenty years, with the proviso that if the income is not sufficient for their support and the education of the said *Catherine S. Corse,* the whole or any part of the above described real estate may be sold, and the proceeds of such sale or sales used for such support and education, and by the construction and decree by the court, to the third paragraph and subdivision of said will, the widow *Mary S. Corse* is given the use, benefit, and enjoyment of the entire property, in conjunction with the right of her daughter *Catherine S. Corse,* during the term of her natural life, and if she should die prior to her daughter *Catherine S. Corse* becoming twenty years of age, then and in such event the said *Catherine S. Corse* has the use, benefit, and enjoyment of the entire property until she reaches the age of twenty years, subject, however, to the additional provision, that if the said *Catherine S. Corse* should die before reaching twenty years of age, her mother still living, then and in that event one third (1/3) of the entire property is given to the said *Mary S. Corse* absolutely, and the two thirds (2/3) divided *pro rata* among the children of the said James P. Corse, to wit: John Corse, James Corse, *Robert Corse, Catherine Pollock,* and *Marion Pollock,* otherwise said *Catherine S. Corse* is to share equally with the other children of deceased; and

"It further appearing that subsequent to the making and filing of the inventory herein there came into the possession of the executors of said will twenty-five (25) shares of preferred stock of the Northern Trading Company, a corporation organized under the laws of the state of North Dakota, which said stock at the present time is not considered to have any value:

"Wherefore, it is ordered and adjudged by the court that on the death of said James P. Corse, and the admission of his said last will to probate, the above described real estate and the title thereto devolved and passed as follows, to wit: the widow *Mary S. Corse,* in conjunction with her daughter *Catherine S. Corse,* is given the use, benefit, and enjoyment of the entire property until the said *Catherine S. Corse* reaches the age of twenty years, with the right to sell and dispose of the whole or any part of the above described real estate, and to use such portion of the proceeds of such sales as may be necessary for their support and the education of the said *Catherine S. Corse;* and should the said *Mary S. Corse* die prior to her daughter *Catherine S. Corse* becoming twenty (20) years of age, then and in such event the said *Catherine S. Corse* has the use, benefit, and enjoyment of the entire property until she reaches the age of twenty (20) years, subject, however, to the additional provision that if the said *Catherine Corse* should die before reaching twenty (20) years of age, then and in that event one third (1/3) of the entire property is given to the widow *Mary S. Corse* absolutely, and the two thirds (2/3) divided *pro rata* among the children of the said James P. Corse, to wit: John Corse, James Corse, *Robert Corse, Christine Pollock,* and *Marion Pollock,* otherwise, on the division of the property, the said *Catherine S. Corse* is to share equally with the other children of said deceased.

"It is further ordered and adjudged that the balance and remainder of the personal property now on hand, as shown by the final account on file herein, the same being entirely income, be and the same is hereby assigned to the said *Mary S. Corse* for the use and benefit of herself and her said daughter *Catherine S. Corse;* and

"It further appearing that it is necessary that a trustee be appointed to carry out the provisions of said will, and the executors named in said will having declined to act as such trustees,

"Wherefore, it is further ordered and adjudged that upon filing in this court of a proper receipt, showing the payment of said balance of personal property, that his said estate be and the same is hereby fully administered and settled, and said executors released and discharged, and that thereupon the Security Trust Company of Racine, Wisconsin, be and

the same is hereby appointed trustee to carry into effect the provisions of said will."

On the 12th day of November, 1926, the *Manufacturers National Bank of Racine,* as trustee, filed a petition with the county court of Racine county to obtain a construction of said will and directions in the matter of the administration and final settlement and distribution of said estate thereunder, in which it was represented that *Catherine S. Corse* attained the age of twenty years November 5, 1926, and that said *Mary S. Corse,* the widow, and *Catherine S. Corse,* the daughter, were alive on said date; that *Mary S. Corse,* the widow, claimed that after said date she was entitled to the income of said estate for the period of her natural life, and that if the income was not sufficient for her comfortable support and maintenance she claimed the right to sell any part of said estate as may be necessary for said purposes, and that the children of the said testator claimed that the estate should be distributed in accordance with the will. The petition prayed for the judgment or order of the court determining the extent of the rights of the widow, *Mary S. Corse,* and of the legatees and remaindermen named in said will, and directing your petitioner as trustee, when, how, and to whom distribution of said estate shall be made. Upon the hearing of said petition the county court of Racine county, ELMER E. GITTINS, county judge, presiding, found and determined that the final decree of November 5, 1918, construed said last will and testament, and, among other matters, found, determined, and adjudged that the widow, *Mary S. Corse,* was and is given the use, benefit, and enjoyment of the entire property of said James P. Corse, testator, in conjunction with the right of her daughter, *Catherine S. Corse,* to support, maintenance, and education until said *Catherine S. Corse* shall have attained the age of twenty years, for the full term and period of the natural life of said widow, *Mary S. Corse;* that such judgment being unappealed from and

unreversed, is *res adjudicata,* and ordered, adjudged, and decreed that the existing trust under said will continue and be administered by said *Manufacturers National Bank of Racine* as trustee, its successors or assigns, in trust for the use and benefit of *Mary S. Corse,* widow of said James P. Corse, deceased, as in said will, as construed by the court, prescribed, for the full term and period of the natural life of said *Mary S. Corse,* reserving all questions as to the distribution of said estate after the death of said *Mary S. Corse,* until the termination of said life estate. From that judgment *Jessie Corse Kachel, Marion Corse Cattron, Christine Pollock, Marion Pollock,* and *Robert H. Corse* appeal.

For the appellants there was a brief by *Upham, Black, Russell & Richardson* of Milwaukee, attorneys, and *Pollock & Pollock* of Fargo, North Dakota, and *Perry J. Stearns* of Milwaukee, of counsel, and oral argument by *Mr. Stearns.*

For the respondent *Manufacturers National Bank of Racine* there was a brief by *Thompson, Myers & Helm* of Racine, attorneys, and *William D. Thompson,* of counsel, and oral argument by *Mr. Thompson.*

For the respondents *Corse* there was a brief by *Elbert B. Hand* of Racine, guardian *ad litem* for *Catherine S. Corse,* and *Hand & Quinn* of Racine, attorneys for *Mary S. Corse;* and the cause was argued orally by *Mr. Hand.*

OWEN, J. The questions calling for consideration appear to be these: (1) What estate does the widow take under the will? (2) Were her rights under the will determined by the final decree of November 5, 1918?

At the time *Catherine* was born testator was seventy-eight or seventy-nine years of age. His wife *Mary* was then about thirty-five years of age. At the time of testator's death testator was eighty-nine years of age and his widow about forty-five years of age. *Catherine* was a half-sister

of his other children.   Testator wrote his own will.   It is apparent from the will that the nurture and education of *Catherine* was the subject of his anxiety.   He desired to make ample provision for her support and education until she reached the age of twenty years, during which time he wanted her under the care and influence of her mother. He accordingly gave to his wife the use and enjoyment of all the income from his estate for the comfortable support and maintenance of his widow and *Catherine* and the education of *Catherine* until she attains the age of twenty years.   If the income should prove insufficient for the purpose, then his executors were empowered to sell all of his real estate and use the proceeds of such sales, and also all notes, moneys, and insurance policies that may be necessary, for their support and education.   That this provision was not made for the continual support of the widow is manifest by the provision that if *Catherine* died before she became twenty years of age, then his estate was to be divided as therein indicated, between his wife and his children.   This provision of the will conclusively negatives any thought that he was making provision for the support and maintenance of his widow as long as she should live.   If that were his purpose he would not have provided for the distribution of his estate upon *Catherine's* death.   The bequest of the income is for a limited period, namely, until *Catherine* attains the age of twenty years.   It is not for a longer time. The testator provided two contingencies upon which the bequest of the income to his wife should terminate.   The first was when *Catherine* became twenty years of age.   The second, if *Catherine* should die before she became twenty years of age.   *Catherine* has attained the age of twenty years, her mother living.   This terminates the bequest of income. The question is, How shall the estate be distributed?

The will does not expressly provide how the estate shall be distributed upon such contingency.   The only provision for the distribution of the estate expressly mentioned in the

will rests upon the contingency of *Catherine's* death before she is twenty years of age. In that event, according to the terms of the will, one third of his estate goes to his widow and the remaining two thirds is to be divided *pro rata* among his children, including *Catherine.* Now it is plain that if *Catherine* is dead she cannot participate in a distribution of the estate. Here is an ambiguity in the will, and the situation enjoins upon courts the duty of discovering the intent of the testator and giving it effect.

Our consideration of the will thus far makes plain the following: (1) The bequest of income was not to be continued after *Catherine* reached twenty years of age; (2) should *Catherine* not live that long, it was to cease upon her death. If *Catherine* died before she reached twenty years of age, one third of his estate was to go to his widow and the other two thirds divided equally among his children. It is plain that a division of his estate was contemplated when the bequest of income terminated. True, the will does not expressly so provide, in case of its termination by lapse of time. The express provision, however, for distribution if *Catherine* should die before reaching twenty years of age strongly indicates such a purpose on the part of the testator, and this indication finds almost conclusive corroboration in the provision that *Catherine* is to share in the two thirds which is to be divided among the children expressly mentioned in the will. So we conclude that the dominant purpose of the testator in making the bequest of income was to provide for the education of *Catherine;* that the bequest of income should continue only so long as it was necessary for that purpose; that the testator deemed that that necessity would cease when *Catherine* attained the age of twenty years or at her death; that when that purpose was attained he proposed a division of his estate, one third to his widow and the remaining two thirds to his children, including *Catherine,* they to share equally in such two thirds.

We now come to consider the effect of the final decree.

It is contended that the final decree construed the will as bequeathing the income to the widow for the term of her natural life, and that as that decree was not appealed from and stands unreversed it is *res adjudicata,* and forecloses a different construction.   It is conceded that the decretive or ordering portion of the decree does not so provide, but it is said that such was the intention, purpose, and construction of the court appears from the recitals found in that document, where it is said: "and by the construction and decree by the court to the third paragraph and subdivision of said will, the widow *Mary S. Corse* is given the use, benefit, and enjoyment of the entire property, in conjunction with the right of her daughter *Catherine S. Corse,* during the term of her natural life."   In this latter proceeding the county judge held that this recital was a part of the decree and *res adjudicata* between the parties.   This contention has prompted us to a very careful consideration of the nature, purpose, and character of a judgment.   Blackstone defines judgments as "the sentence of the law pronounced by the court upon the matter contained in the record." 3 Bl. Comm. p. 395.   Freeman in his work on Judgments (vol. 1, 5th ed.), sec. 2, says: "A judgment, except where the signification of the word has been changed by statute, is defined as being 'the decision or sentence of the law pronounced by a court or other competent tribunal upon the matter contained in the record.'"   In *Ætna Ins. Co. v. Swift,* 12 Minn. 437, 444, the court said:

"A judgment is the final determination of the rights of the parties in an action.   It is the sentence of the law pronounced by the court upon the matter contained in the record."

At sec. 68 in 1 Freeman on Judgments (5th ed.) it is said:

"At common law, the judgment or sentence of law commenced with 'it is considered by the court that plaintiff or

Will of Corse, 195 Wis. 88.

defendant recover,' etc. Those words were considered peculiarly appropriate, as involving and expressing the idea that what was about to be ordered was not the sentence of the judges, but of the law. They came to be inseparably associated in the minds of lawyers with the entry of a judgment."

The author then shows that in modern times the use of this particular language is not necessary, but any words of the same meaning or significance are sufficient: such as, "It is ordered, adjudged, and decreed." However, it seems that some such words are still essential to indicate that what follows is the sentence of the law pronounced by the court. While not necessary, especially in actions at law, it is common practice to precede the sentence of the law with a recital of the precedent facts or proceedings upon which the sentence of the law is based. These recitals, however, are no part of the sentence of the law, but rather a review of the proceedings which authorized the sentence. True, these recitals often constitute judicial determinations of the facts therein stated and are often accorded conclusive effect, such as the recital that service of summons was duly made, that the defendant failed to answer, that an assignee has fully discharged the duties of his trust, etc. *Magnus v. Sleeper,* 69 Wis. 219, 34 N. W. 149; *Schmidt v. Stolowski,* 126 Wis. 55, 105 N. W. 44. However, these recitals form no part of the sentence of the law, but merely show justification for pronouncing the sentence of the law. A reference to the sentence of the law (the judgment) rendered by the court November 5, 1918, discloses an absence of any direction for the distribution or disposition of the estate under the present contingency. It contains no direction as to what shall be done with the estate when *Catherine* attains the age of twenty years, her mother living; neither is it declared as the sentence of the law that the widow is entitled to the income of the estate so long as she shall live. The recitals to which we are referring as indicating the view of the court that the

widow is entitled to the income for life appear to have no proper place in the decree.   It is not a recital of any fact justifying the decree or upon which it is based.   It appears to be nothing more than a recitation of how the court is going to construe the will.   A recital of the will *in hæc verba* would be far more to the point.   At any rate, in pronouncing the sentence of the law the court does not construe the will in accordance with its pre-asserted views, and, if it had, it would have been error.   If this judgment be ambiguous it must, if reasonably possible, be so construed as to exclude error.   *Maxcy v. McCord,* 120 Wis. 571, 98 N. W. 529, 923.   We know of no compelling principle requiring a construction of this judgment tainting it with error and defeating the manifest will and purpose of the testator.   We hold that the final decree of November 5, 1918, did not award the widow a life estate, and that upon the present petition of the *Manufacturers National Bank of Racine* the county court should enter an order construing the will as herein indicated.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter an order or decree construing the will as indicated in this opinion.

ESCHWEILER, J. (*dissenting*).   With so much of the majority opinion as holds that there was not determined and adjudged in November, 1918, that the widow took but a life estate, I cannot agree.

A construction of the will was then asked for; the question of the nature of the widow's title to or interest in the real estate was proper for the court to consider; the court did consider that very question and expressed himself plainly and explicitly thereon; having so passed on the question and so expressed his conclusion, I think it became the law of the case and it should be held to be beyond the power of this court to now alter or change, however wrong it might have

been as a construction of the will.  To now reconstrue the
will as is done by the majority, is in effect to now review a
finding and judgment long since passed beyond this court's
power and control, however much tainted with error it
might have been.

That an appeal might have been taken from what the
court determined in 1918 and any errors corrected, or at
least changed, by appeal here, cannot well be questioned,
and parties failing to have appealed should be now fore-
closed.  *Triba v. Lass,* 146 Wis. 202, 204, 131 N. W. 357;
*Estate of Ross,* 181 Wis. 125, 135, 194 N. W. 151; *Estate
of Garbade,* 187 Wis. 105, 108, 203 N. W. 748; *Will of
Inbusch,* 193 Wis. 10, 212 N. W. 634.